UNITED STATES of America

v.

Bobby HARRISON, Petitioner–Defendant.

No. 5:13–CR–130.

United States District Court,
N.D. New York.

Signed Sept. 29, 2014.

Geoffrey J.L. Brown, Office of United States Attorney, Syracuse, NY, for United States of America.

Bobby Harrison, Ray Brook, NY, pro se.

Christina G. Cagnina, Office of Christina G. Cagnina, Syracuse, NY, for Bobby Harrison.

### MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Defendant Bobby Harrison ("Harrison" or "defendant"), proceeding pro se, moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of imprisonment following his plea of guilty to a one count information charging him with violating §§ 841(a)(1), (b)(1)(B), and 846. The United States of America (the "Government") opposed the motion and defendant replied. Defendant also filed a supplement in further support of his § 2255 motion although not permitted. The motion was considered on its submissions and no oral argument was heard.

## II. BACKGROUND

On September 20, 2012, defendant conspired with two others to purchase one kilogram of cocaine from a person who, unbeknownst to them, was a confidential informant. On September 24, 2012, defendant and the two other people arrived at an agreed upon location with $39,350 to meet the confidential informant and make the exchange. Upon producing the money, the three purchasers were apprehended by law enforcement. A subsequent search of the car in which they arrived revealed a loaded handgun behind the front passenger seat.

On September 25, 2012, Christina Cagnina, Esq. ("Attorney Cagnina") was as-

signed as counsel to defendant. On April 12, 2013, defendant entered into a written plea agreement with the Government, and on the same day appeared via video conference to enter a plea of guilty. Defendant waived his right to appear in person, and was sworn prior to entering his plea. Pursuant to the written plea agreement, defendant pleaded guilty to a one count information charging him with conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.

The written plea agreement set out the terms relating to sentencing, appeal, and collateral attack of defendant's conviction and sentence. The agreement gave a detailed explanation of the penalties for conviction, including a mandatory minimum sentence of 120 months and eight years of supervised release. Defendant was subject to an enhanced mandatory minimum 120 month sentence because he has a prior felony drug conviction. On November 6, 2003, defendant was convicted in Cortland County Court of criminal possession of a controlled substance in the third degree.

The written plea agreement contained a "Waiver of Rights to Appeal and Collateral Attack," which stated that defendant "waives (gives up) any and all rights, including those conferred by ... 28 U.S.C. § 2255, to appeal and/or collaterally attack" his conviction and any sentence of 120 months or less. Gov't Ex. 1 ¶ 7 ("Plea Agreement"). In exchange for accepting the plea agreement, the Government agreed not to prosecute any other offenses based on conduct described in the information. Id. ¶ 2. At the plea colloquy on April 12, 2013, defendant affirmed under oath that he understood the conditions of his plea, including his sentence and his waiver of the right to appeal and/or collaterally attack his sentence. Gov't Ex. 2, Plea Proc. Tr. 13:13–8, April 12, 2013. Under questioning at this proceeding, he did not indicate that counsel's performance was unsatisfactory during the plea process or that his plea was in any way unknowing or involuntary. Id. 9:22–10:6, 10:16–18.

On August 16, 2013, defendant was sentenced to the mandatory minimum of 120 months in prison, followed by eight years of supervised release. Defendant did not file an appeal.

### III. DISCUSSION

#### A. Legal Standard

A 28 U.S.C. § 2255 petitioner asks a court to "vacate, set aside, or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A § 2255 motion must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. Id.

Because Harrison is proceeding pro se, his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995), and read to "raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir.2001). However, a court "need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Puglisi v. United States, 586 F.3d 209, 214 (2d Cir.2009).

■ "In [a] collateral attack upon his conviction, petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief." Burnell v. United States, 1:06–CR–00497,

2009 WL 3698386, at *1 (N.D.N.Y. Nov. 2, 2009) (McAvoy, S.J.) (quoting *United States. v. Gallo–Lopez,* 931 F.Supp. 146, 148 (N.D.N.Y.1996) (McAvoy, C.J.)). It is within a court's discretion whether to hold a hearing; a court may decide the issue "based on the record of the original proceedings and affidavits of the parties." *Padin v. United States,* 521 Fed.Appx. 36, 38 (2d Cir.2013) (summary order) (citing *Chang v. United States,* 250 F.3d 79, 86 (2d Cir.2001)).

## B. *Harrison's Motion*

Harrison's § 2255 motion claims that Attorney Cagnina was constitutionally ineffective because she: (1) failed to investigate his prior conviction; (2) failed to object to his improper sentence under the sentencing guidelines; and (3) failed to file a notice of appeal. Further, in defendant's reply, he also claims that due to Attorney Cagnina's ineffective assistance regarding her lack of investigation of his prior conviction and her failure to object to the sentencing enhancement, he did not enter into the plea agreement knowingly or voluntarily.[1] The Government argues: (1) defendant waived his rights to collaterally attack or appeal his sentence; and (2) defendant did not receive ineffective assistance of counsel that would render his appeal waiver unenforceable.

To prevail on any of these ineffective-assistance arguments, Harrison must show: "(1) that [Attorney Cagnina's] performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Kieser v. New York,* 56 F.3d 16, 18

(2d Cir.1995) (per curiam) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a "strong presumption" that counsel's assistance was reasonable, and "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

### 1. *Failure to Investigate and Challenge Prior Conviction*

Harrison argues that Attorney Cagnina failed to investigate whether his prior state court conviction of third degree possession of a controlled substance represented a conviction for possession with intent to distribute or merely a conviction for simple possession. He contends that his 2003 conviction was used to enhance the instant federal conviction pursuant 21 U.S.C. § 851, but had Attorney Cagnina investigated his 2003 conviction, she would have learned that the 2003 conviction was for only possession of a controlled substance and thus did not constitute a prior conviction for purposes of an enhanced sentence. According to defendant, he requested Attorney Cagnina research and obtain records pertaining to his 2003 conviction. Harrison contends that had she done so, she would have learned that he was not convicted of either "distribution" or "intent to distribute" a controlled substance, a necessary element of a "controlled substance offense" for purposes of calculating the sentencing enhancement under §§ 4B1.1 and 4B1.2(b) of the United States Sentencing Guidelines ("U.S.S.G.").[2] Cit-

---

1. Although arguments raised for the first time in a reply brief are not usually considered, even when made by a pro se litigant, *see Brown v. Ionescu,* 380 Fed.Appx. 71, 72 (2d

Cir.2010), this argument will be considered as it adds to arguments already raised.

2. The term "controlled substance offense" means an offense under federal or state law,

ing his state court indictment for criminal possession of a controlled substance in the third degree from 2003, defendant points out that intent to sell or distribute was not an element of his indictment, and that he was thus not convicted of a "controlled substance offense" under §§ 4B1.1 and 4B1.2(b). Harrison also asserts that Attorney Cagnina failed to make this argument to the court. He avers that had his prior conviction been investigated and the enhancement objected to, his sentence would have been 60 months rather than the mandatory minimum 120 months.

■ A defendant's waiver of the right to appeal or collaterally attack his sentence in a plea agreement is presumptively enforceable provided the waiver is both "knowing" and "voluntary." *United States v. Coston,* 737 F.3d 235, 237 (2d Cir.2013) (per curiam); *see also United States v. Riggi,* 649 F.3d 143, 147 (2d Cir.2011) ("We have 'repeatedly upheld the validity of [appeal] waivers' if they are 'knowingly, voluntarily, and competently provided by the defendant.' ") (quoting *United States v. Gomez–Perez,* 215 F.3d 315, 318 (2d Cir.2000) (alteration in original)).

Here, the plea agreement Harrison executed with the Government provided that defendant "waives any and all rights, including those conferred by ... 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment." During the plea proceeding on April 12, 2013, defendant affirmed that he had signed this plea agreement voluntarily, understood its terms, and that he was satisfied with Attorney Cagnina's advocacy:

> THE COURT: Now, you are represented by your attorney Christina Cagnina?

THE DEFENDANT: Yes, Your Honor.

THE COURT: She was appointed by the court to help you out?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with her?

THE DEFENDANT: Very.

THE COURT: And has she advised you of your rights?

THE DEFENDANT: Yes, she has.

*Id.* 9:22–10:6. This colloquy continued:

> THE COURT: Did she answer any questions you may have had about the charges against you?
>
> THE DEFENDANT: Yes, Your Honor, a lot.

*Id.* 10:16–18. The Court inquired further regarding the plea agreement:

> THE COURT: Did you also enter into a Plea Agreement with the United States Government?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: And did you read the Plea Agreement?
>
> THE DEFENDANT: Yes, yes Your Honor.
>
> THE COURT: Did you review it with Ms. Cagnina?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did she answer any and all questions with respect to the Plea Agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you sign the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has anyone forced you or threatened you to get you to sign the Plea Agreement?

punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. § 4B1.2.

THE DEFENDANT: No, Your Honor.

THE COURT: Did you sign the Plea Agreement of your own free will?

THE DEFENDANT: Yes, I did, Your Honor.

*Id.* 10:22–11:14. Defendant further acknowledged he understood that he was waiving his rights to appeal and collaterally attack his sentence:

THE COURT: Also do you understand that under the plea agreement, you are waiving your right to appeal or collaterally attack your sentence unless I sentence you to more than ten years or one hundred and twenty months in prison?

THE DEFENDANT: Yes, I understand.

*Id.* 13:13–8.

Defendant then affirmed that he understood the mandatory minimum sentence that would be imposed:

THE COURT: Do you clearly understand that at this time moment you are facing a mandatory minimum sentence of ten years which means—

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT:—which means that unless circumstances change between now and sentencing, I will have no choice but to give you at least ten years in prison, and I could, of course, sentence you to more. Do you understand?

THE DEFENDANT: Yes, your honor.

*Id.* 18:4–13.

Defendant's unambiguous statements demonstrate that his assent to the plea agreement was both knowing and voluntary. Accordingly, the waiver is valid on its face and presumptively enforceable.

## 2. *Attack on the Validity of the Plea Bargaining Process*

Harrison claims that despite this, his appeal waiver is unenforceable because his plea was not entered into with the effective assistance of counsel. He contends that he did not make a knowing and intelligent plea because counsel misinformed him that he faced a mandatory minimum of 120 months years based on his prior conviction. He argues that he pleaded guilty based on this misinformation, when in fact, if Attorney Cagnina challenged the application of the prior conviction, he would have only been subject to a 60 month mandatory minimum.

▮ The presumption that a waiver is enforceable may be overcome by "an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." *Frederick v. Warden, Lewisburg Corr. Facility,* 308 F.3d 192, 195 (2d Cir.2002). "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary *because* the advice he received from counsel was not within acceptable standards.'" *Parisi v. United States,* 529 F.3d 134, 138 (2d Cir.2008). "In challenging the ineffectiveness of counsel in connection with a plea agreement, a defendant is challenging 'the constitutionality of the process by which he waived [his right to appeal].'" *Id.* (quoting *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir.2001)). The United States Court of Appeals for the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct," which does avoid the waiver.

*Parisi,* 529 F.3d at 138–39 (emphasis in original.)

■ The mere assertion of an ineffective assistance of counsel claim is not sufficient to overcome the presumption that a waiver is enforceable. *United States v. Monzon,* 359 F.3d 110, 118–19 (2d Cir. 2004) ("We reject the notion that an appeal waiver becomes unenforceable simply because a defendant 'claims' ... ineffective assistance of counsel."). The claim of ineffective assistance must relate to the plea process and be meritorious to void an otherwise valid waiver. *See United States v. Jimenez,* 106 Fed.Appx. 92, 93 (2d Cir. 2004) ("[A] claim of ineffective assistance is waived when ... it attacks the sentence itself and not the underlying plea agreement that. supported the sentence."); *Monzon,* 359 F.3d at 118–19 ("The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious."); *United States v. Djelevic,* 161 F.3d 104, 106 (2d Cir.1998) (A claim that counsel was ineffective "not at the time of the plea, but at sentencing" cannot survive a waiver.). "[O]therwise, a defendant who secured the benefits of a plea agreement by, *inter alia,* knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit." *United States v. Oladimeji,* 463 F.3d 152, 155 (2d Cir.2006) (internal quotations omitted).

■ A claim that counsel was ineffective during the plea bargaining process must be evaluated under the now-familiar, two-part test set forth in *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. *See Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (*Strickland* analysis applies to plea process); *Ramzan v. Unit-ed States,* 06 Cr. 456, 2012 WL 3188847, at *4 (S.D.N.Y. Aug. 6, 2012). Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that the defendant was prejudiced by the error. *See Strickland,* 466 U.S. at 691–92, 104 S.Ct. 2052. When raising a claim of ineffective assistance of counsel during the plea process, a defendant must establish (1) "that his attorney's advice to plead guilty was not within the range of competence demanded of attorneys in criminal cases," and (2) "that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Belle v. Superintendent,* 9:11–CV–0657, 2013 WL 992663, at *12 .(N.D.N.Y. Mar. 13, 2013) (Mordue, J) (internal quotations omitted); *see also Roe v. Flores–Ortega,* 528 U.S. 470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

Regarding the first prong under *Strickland,* there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). As to the second prong requiring prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In applying the test, a court may begin its inquiry with either prong, and a matter may be disposed of through analysis of the prejudice prong alone. *Id.* at 697, 104 S.Ct. 2052.

■ Harrison argues he did not knowingly agree to plead guilty because Attorney Cagnina was ineffective in investigating his prior conviction and challenging the sentencing enhancement based on that pri-

or conviction. Based on this, he contends Attorney Cagnina misinformed him that he was subject to a mandatory minimum sentence of 120 months, which impaired his ability to make an informed decision. Defendant contends that had he not been misinformed of his minimum sentence, he would not have agreed to a plea mandating a sentence of 120 months, but would have instead went to trial.

Even reading the petition liberally, the foregoing is defendant's only attempt to connect this claimed ineffective assistance to the plea bargaining process. Thus, unless defendant succeeds in establishing the foregoing ineffective assistance claim or otherwise establishes that his consent to the plea agreement was not knowing and voluntary, the plea agreement's waiver provision is enforceable. If defendant's waiver is valid then he is barred from attacking his sentence through a § 2255 motion, except for the notice of appeal claim discussed below.

■ Defendant has not offered any evidence that his plea and appeal waiver were the result of coercion. Where, as here, a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them." *Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y.2004) (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

Under *Strickland*, even if Attorney Cagnina's performance somehow fell below an objective standard of reasonableness, habeas relief would not be warranted because Harrison has failed to satisfy the prejudice prong. There is no support for the conclusion that, but for Attorney Cagnina's allegedly deficient representation, Harrison would have proceeded to trial or obtained a more favorable result. Harrison was sentenced in accordance with his plea agreement pursuant to 21 U.S.C. §§ 841(b)(1)(B)(viii), which states, "If any person commits such a violation after a prior conviction for a *felony drug offense* has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B)(viii) [emphasis added]. The term "felony drug offense" is defined at 21 U.S.C. § 802(44) as, "[a]n offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Defendant was sentenced to three to nine years for his previous conviction, a class B felony in New York State, which comports with the definition of "felony drug offense" under 21 U.S.C. § 802(44).

Despite defendant's assertions, he was not sentenced pursuant to §§ 4B1.1 and 4B1.2(b). He was sentenced pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851. His prior conviction caused the mandatory minimum sentence to double from 60 months to 120 months, and an intent to sell or distribute element in his prior conviction was not required. Because Harrison received the mandatory minimum sentence required by application of the 21 U.S.C. § 851 sentencing enhancement, nothing Attorney Cagnina could have done by way of investigating Harrison's prior conviction or otherwise challenging the Guidelines

sentencing calculation could have earned defendant a more favorable term of imprisonment. Nor would defendant have proceeded to trial as he acknowledges. Therefore, Harrison cannot establish prejudice under *Strickland* and his claim that Attorney Cagnina was ineffective in negotiating his plea is without merit. Accordingly, the presumptively valid appeal waiver remains and bars defendant's remaining arguments with the exception of his claim that Attorney Cagnina failed to file a notice of appeal on his behalf.

### 3. *Failure to File a Notice of Appeal*

■ Harrison next contends that Attorney Cagnina was ineffective for failing to file a notice of appeal on his behalf, despite being instructed to do so. Specifically, Harrison states: "After sentencing, I requested Attorney Cagnina to file an appeal." Def.'s Reply Memo of Law, Ex. 1, Harrison Aff., ¶ 6, May 27, 2014.[3] Defendant asserts that he asked counsel to appeal the application of the 21 U.S.C. § 851 sentencing enhancement. He contends that Attorney Cagnina replied, "I can only challenge the time frame of the priors." Def.'s Memo. of Law, 10. Harrison states he was under the impression Attorney Cagnina was going to file his appeal and wrote her several letters following sentencing, inquiring about the status of his appeal. Def.'s Reply Memo. of Law, 13. Defendant attaches one of these letters in support of his motion. *See* Def.'s Memo. of Law, Ex. 3. The letter is dated January 15, 2014, and is addressed to Attorney Cagnina at 108 W. Washington St.-Suite 300, Syracuse, NY 13202. It is noted that Attorney Cagnina's address on the CM/ECF system is 108 W. Jefferson St. Suite 300, Syracuse, NY 13202. In the letter,

Harrison explains that it is the third or fourth letter he has sent to Attorney Cagnina concerning the status of his appeal. He also notes that he received a copy of his docket sheet and it does not contain information indicating that Attorney Cagnina filed a notice of appeal on his behalf.

■ Under the familiar two-part test governing ineffective assistance claims, Harrison must demonstrate that his counsel's representation (1) "fell below·an objective standard of reasonableness" and (2) prejudiced him. *Strickland*, 466 U.S. at 688, 692, 104 S.Ct. 2052. A lawyer who fails to file a notice of appeal after being asked to do so by a client "acts in a manner that is professionally unreasonable," and because the lawyer's failure deprives the client "of the appellate proceeding altogether," it "demands a presumption of prejudice." *Roe v. Flores–Ortega*, 528 U.S. 470, 477, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In other words, the defendant need not demonstrate that his appeal would have merit in order to establish prejudice. A defendant who shows that he would have appealed "but for counsel's deficient performance" makes out an ineffective assistance claim under *Strickland*. *Id.* at 484, 120 S.Ct. 1029. In *Campusano v. United States*, the Second Circuit held that the presumption of prejudice established in *Flores–Ortega* applies *even* if the defendant has signed a plea agreement waiving his right to appeal. 442 F.3d 770, 772 (2d Cir.2006). Thus, even if an appeal would be frivolous—as would be here because defendant's plea agreement contained a waiver provision and he was sentenced to the mandatory minimum—an attorney still has an obligation to file an

---

**3.** Defendant submitted two affidavits; one in connection with his memorandum of law and one in connection with his reply memoran-

dum of law, however the first affidavit is not notarized.

appeal and submit a brief if asked by his or her client.

 Harrison bears the burden of proving, by a preponderance of this evidence, that he instructed his counsel to file a notice of appeal. *See Chang,* 250 F.3d at 86. A mere conclusory allegation that a defendant requested an appeal, without more, is insufficient to warrant § 2255 relief. *See, e.g., Scott v. United States,* No. 07–CV–4039, 2011 WL 115087, at *5 (E.D.N.Y. Jan. 13, 2011). "Although the district court is required to engage in fact-finding to determine if an appeal was requested, *Campusano* specifically recognizes that 'the district court has discretion to determine if a testimonial hearing will be conducted' in order to make this finding." *Lopez v. United States,* No. 03–CR–317, 2006 WL 2020389 at *3 (S.D.N.Y. July 12, 2006) (quoting *Campusano,* 442 F.3d at 776). A district court may expand the record to include affidavits or other written submissions to decide disputed facts. *Chang,* 250 F.3d at 86. A court is not required to hold a hearing where both parties have filed affidavits and thus "the testimony of [defendant] and his trial counsel would add little or nothing to the written submissions." *Id.*

The Government has submitted an affidavit from Attorney Cagnina, which states: "At no time did Mr. Harrison ever make a timely request that I file a Notice of Appeal. Had he done so, I would have filed one on his behalf." Gov'ts Memo. of Law, Ex. 3, Cagnina Aff., ¶ 4, May 19, 2014. She also asserts:

> In meetings prior to sentencing we had discussed specifically his rights to appeal under the plea agreement he entered into, the possibility of the court considering going below the statutory minimum sentence, and other issues related to potential appeals. I specifically advised him that if the court did not sen-

tence him to above the mandatory minimum then he had waived a right to appeal.

*Id.* Attorney Cagnina also testified that on approximately February 5, 2014, she received a letter from Harrison indicating he had tried to reach her. *Id.* ¶ 6. She notes that her address on the letter was incorrect and combined her prior address and current address even though Harrison's family had met with her regarding his case and had only been to her current office. *Id.* Attorney Cagnina does not specify whether the letter she references is the same January 15, 2014, letter which defendant attached in support of his motion. She also asserts that the first time she became aware that Harrison wished to file a notice of appeal after his sentencing was by the filing of his pending § 2255 motion. *Id.* ¶ 8.

Harrison has addressed Attorney Cagnina's sworn statement by contending that it is "riddle [sic] with false information in order to cover up her conduct involving dishonesty, deceit and misrepresentation." Def.'s Reply Memo. of Law, 4. He asserts that Attorney Cagnina fails to mention the subsequent phone conversations she has had with him, including phone calls she allegedly made to defendant's correctional facility to discuss his pending § 2255 motion, during which she asked him to withdraw his ineffective assistance claims.

Apart from the conflicting sworn affidavits, there is evidence which weighs in favor of a finding that defendant asked Attorney Cagnina to file a notice of appeal. First, defendant has shown that he would have appealed "but for counsel's deficient performance." *Flores–Ortega,* 528 U.S. at 484, 120 S.Ct. 1029. While defendant faced a mandatory minimum of 120 months and was sentenced to no more than the mandatory minimum, he labored under the mistaken belief that 21 U.S.C. § 851 was

improperly applied to enhance his sentence and increase his mandatory minimum from 60 months to 120 months. Despite Attorney Cagnina's explanation, defendant believed that his prior felony conviction was not a qualifying offense for purposes of the sentencing enhancement and throughout sentencing, did not believe the enhancement was lawfully applied to him. Therefore, he maintains that he wished to appeal on this basis. Defendant's arguments have been consistent on this point throughout his motion papers and affidavits. Thus, it is entirely likely that despite receiving the mandatory minimum sentence, defendant still wished to file a notice of appeal.

Finally, the temporal proximity between when defendant contends he requested Attorney Cagnina file an appeal at the conclusion of sentencing on August 16, 2013, and when defendant filed this petition approximately six months later also weighs in favor of establishing that he asked Attorney Cagnina to file a notice of appeal. Moreover, according to Harrison, this petition is not the first time he raised the issue. He contends he wrote Attorney Cagnina several times following sentencing regarding the status of his appeal, and submitted a letter dated January 15, 2014, in which he notes that it is his third or fourth attempt to contact her regarding the status of his appeal. The facts here are in direct contrast to those cases in which courts have found that a nearly year long delay between when a defendant claims he asked his counsel to file a notice of appeal and his counsel refused and when the defendant filed a § 2255 petition, undermines that defendant's claim. *See e.g., Roberts v. United States,* No. 11–CV–4404, 2014 WL 4199691, at *5 (E.D.N.Y. Aug. 22, 2014) (dismissing ineffective assistance claim where petitioner waited more than thirteen months after sentencing to file petition); *Colon v. United States,* No.

07 Civ. 2172, 2010 WL 1644260, at *6 (S.D.N.Y. Apr. 21, 2010) (dismissing ineffective assistance claim where petitioner waited eleven months after sentencing to file petition); *Cruz–Santos v. United States,* Nos. 09 Civ. 6503, 08 Cr. 747, 2010 WL 1372682, at *3 (S.D.N.Y. Mar. 30, 2010) ("Petitioner's claim that he requested his attorney file an appeal is further undermined by his eight month delay in raising the issue of his appeal."); *Nicholson v. United States,* 566 F.Supp.2d 300, 305 (S.D.N.Y.2008) ("[T]o wait eight months to complain for the first time—in a § 2255 petition—that counsel had failed to file a notice of appeal, is more consistent with' a fair inference that no request for such appeal was ever communicated to counsel.").

Finally, it is noted that Attorney Cagnina explained in her sworn affidavit that the first time she became aware that Harrison wished to file a notice of appeal after his sentencing was by the filing of this pending § 2255 motion. Yet, she testified that she received a letter on February 5, 2014, from Harrison indicating he had tried to reach her but did not discuss the contents of that letter. If the letter she received on February 5, 2014 was Harrison's January 15, 2014 letter, it contained information referencing his earlier request to file a notice of appeal and questioning the status of appeal, which would have put her on notice regarding his notice of appeal claim and been in direct conflict with the assertions in her sworn affidavit. In the event that Attorney Cagnina received a different letter from Harrison on February 5, 2014, it is likely, although not certain, that Harrison mentioned his appeal in that correspondence as well.

Based on Harrison's submissions and sworn statements, he has established by a preponderance of the evidence that he asked Attorney Cagnina to file a notice of

appeal on his behalf following sentencing, and it is undisputed that she did not do so. Her failure to do so constituted ineffective assistance of counsel. Accordingly, an amended judgment will be filed. *See Betts v. United States,* 5:05–CV–1434, 2008 WL 2169687, at \*3 (N.D.N.Y. May 22, 2008) (Mordue, C.J.) (citing *Mena v. United States,* No. 04 CIV. 6523, 2004 WL 2734454, at \*4 (S.D.N.Y. Nov. 30, 2004)). Attorney Cagnina is directed to file a timely notice of appeal on behalf of Harrison. As a sanction for Attorney Cagnina's ineffective assistance of counsel, she is directed to pay the filing fee with defendant's notice of appeal. In accordance with Federal Rule of Appellate Procedure 4(b), Attorney Cagnina will have fourteen days from the date the amended judgment is filed in which to file the notice of appeal on defendant's behalf. Upon the filing of the notice of appeal and filing fee, Attorney Cagnina will be relieved of further duties as counsel in this case.

## IV. *CONCLUSION*

Harrison's plea agreement, which he entered into knowingly and voluntarily, contained a waiver provision which is valid and enforceable. His claim that his trial counsel Attorney Cagnina was ineffectively during the plea process is without merit and does not invalidate the appeal waiver. Accordingly, defendant's claims that Attorney Cagnina was ineffective when she failed to investigate his prior conviction and failed to object to his sentence are barred by the appeal waiver. However, defendant's claim that he asked his trial counsel to file a notice of appeal is not barred by the waiver. He has established that he asked Attorney Cagnina to file a notice of appeal after sentencing and that she did not do so. To afford defendant the opportunity to appeal that was denied him due to counsel's ineffective assistance, vacatur of the judgement and reentry is appropriate and will provide defendant with the opportunity to timely file a notice of appeal.

Therefore, it is

ORDERED that

1. Defendant Bobby Harrison's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is GRANTED in part;

2. For the reasons stated above, the August 26, 2013 judgment in 13–CR–00130 (Dkt. No. 31) is VACATED;

3. The Clerk file a new criminal judgment in 13–CR–00130 which contains the identical sentence and other conditions reflected in the prior judgment issued in this action;

4. Christina G. Cagnina, Esq. is directed to file a notice of appeal on defendant Bobby Harrison's behalf within fourteen (14) days of the filing of the amended judgment;

5. As a sanction, Christina G. Cagnina, Esq. is directed to pay the filing fee with defendant's notice of appeal;

6. Upon the filing of the notice of appeal and filing fee, Christina G. Cagnina, Esq. is relieved as counsel for defendant Bobby Harrison;

7. The remaining grounds asserted by defendant Bobby Harrison in his motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence are DISMISSED;

8. The Clerk serve a copy of this Memorandum–Decision and Order upon the parties in accordance with the Local Rules; and

394

9. The Clerk close the file.

IT IS SO ORDERED.